## UNITED STATES BANKRUPTCY COURT

## FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| IN RE: | C/A No. 21-02968-JW |
| Jaquana Tanecia Milledge, | Chapter 13 |
| Debtor, | Adv. Pro. No. 22-80001-JW |
| Jaquana Tanecia Milledge, | |
| Plaintiff, | |
| vs. | |
| Carolina Acceptance, | |
| Defendant. | |

### ORDER DENYING DEFENDANT'S
### MOTION TO DISMISS AND ORDER TO MAKE MORE DEFINITE STATEMENT

This matter comes before the Court upon a Motion to Dismiss ("Motion") filed by the Defendant Carolina Acceptance ("Creditor") in response to a Second Amended Complaint ("Complaint") filed by Plaintiff Jaquana Tanecia Milledge ("Debtor").  Creditor filed its Motion pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim, which applies to this adversary proceeding under Rule 7012(b) of the Federal Rules of Bankruptcy Procedure.  This Court has jurisdiction over this proceeding pursuant to 28 U.S.C. §§ 1334 and 157.

### INTRODUCTION

According to the allegations of the pleadings, the circumstances discussed in this matter are unusual.  Debtor purchased a 2016 Dodge Charger SXT ("Vehicle") from Creditor and defaulted on a $500 portion of the initial down payment prepetition.  Debtor then filed a bankruptcy

case while possessing and using the Vehicle, which became property of Debtor's bankruptcy estate.  Debtor also proposed a plan to pay Creditor's claim in full pursuant to provisions of the Bankruptcy Code.  Creditor objected to Debtor's initial reorganization plan and requested the confirmation be denied. In this case, the automatic stay did not go into effect on the petition date pursuant to 11 U.S.C. § 362(c)(4).  During this same period Creditor repossessed the Vehicle post-petition without advising Debtor's counsel based on Debtor's prepetition payment default for the remainder of the down payment. Ultimately, despite attempts by Debtor to make payments to Creditor as advised by her counsel, Creditor sold the Vehicle post-petition at a private sale on January 4, 2022, which was 49 days after Debtor filed her bankruptcy petition and a day after Debtor filed an adversary proceeding complaint seeking turnover of the Vehicle as property of the estate.

Debtor's Complaint seeks turnover under 11 U.S.C. § 542 of the fair market value of the Vehicle, a remedy under 11 U.S.C. § 105 for Creditor's breach of agreement reached regarding bankruptcy plan treatment and relief associated with 11 U.S.C. § 108(b), which provides certain extensions of time to Debtor to cure default, redeem or perform under nonbankruptcy law or agreements.  As relief, Debtor seeks a finding of contempt, the fair market value of the Vehicle, attorney's fees, actual damages, and punitive damages

The pleadings highlight the complications arising when a creditor through counsel addresses Debtor's Chapter 13 plan while simultaneously directly pursuing nonbankruptcy collection action against a debtor, which are not subject to the automatic stay under the circumstances of this particular case.

## PLEADINGS

A review of the Complaint and Motion to Dismiss indicate that the parties do not dispute the basic facts, sequence of events or relevant documents that are central to this proceeding. In fact, the relevant documents, being mutually identified and authenticated in the pleadings, were also previously admitted into the record of this proceeding in connection with an early turnover motion.

The essence of the Complaint seeks turnover of the fair market value of the Vehicle owned by Debtor on the date of the bankruptcy petition, which Debtor alleges was improperly sold after a post-petition repossession and sale during the bankruptcy case.

The Complaint's allegations assert that the Vehicle was property of the bankruptcy estate and that Creditor's claim was being paid in full with interest pursuant to a Chapter 13 plan filed with the bankruptcy petition.  Furthermore, Debtor alleges that due to the filing of the bankruptcy case, she had a finite period to cure or redeem the Vehicle and that an agreement was entered by the parties through counsel to return the Vehicle after repossession upon Debtor making certain payments to avoid its sale. The Complaint asserts three causes of action, which incorporate and reallege all prior allegations and request relief in a finding of contempt, turnover of fair market value, an award of actual damages, reasonable attorney's fees and costs and punitive damages as well as "such other and further relief as is just and proper."  The Complaint bases relief on the following specific Bankruptcy Code sections: 541(a), 542, 1306, 1322(b)(3), 108(b), and 105. Creditor challenges the sufficiency of the allegations in the Complaint for a failure to state a claim pursuant to Rule 12(b)(6) and asserts that no automatic stay went into effect as provided by 11 U.S.C. § 362(c)(4)(a), which therefore allowed its actions.[1]

---

[1] In the preamble to the Motion, Creditor also suggests that state law governs the matter and requests the Court to abstain.  That request does not correctly fall within Rule 12(b)(6) and is not sufficiently stated or specific to be

**STANDARD FOR DECISION**

Federal Rule of Civil Procedure 8(a)(2), which applies here under Rule 7008 of the Federal Rules of Bankruptcy Procedure, requires only a short and plain statement of the claim showing that the plaintiff is entitled to relief and a demand for relief, to give the defendant fair notice of what the claim is and the grounds upon which it rests. *McCleary-Evans v. Maryland Dep't of Transp.*, 780 F.3d 582, 585 (4th Cir. 2015) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)), *see also In re Barnhardt*, C/A No. 16-06561-JW, Adv. Pro. No. 17-80038-JW, 2018 WL 1226070, at *7 (Bankr. D.S.C. Jan. 10, 2018) (citing Charles Alan Wright and Arthur R. Miller, *et al.*, 5 FED. PRAC. & PROC. CIV. § 1215 (3d ed.)). "A complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555). "A complaint meets the plausibility standard when it articulates facts, when accepted as true, that show that the plaintiff has stated a claim entitling him to relief, i.e., the plausibility of entitlement to relief." *Frances v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) (*quoting Iqbal*, 556 U.S. at 678)). "In reviewing claims for failure to state a claim, a court must construe the allegations in light of the light most favorable to the plaintiff." *In re Jones*, 618 B.R. 757, 762-63 (Bankr. D.S.C. 2020) (citing *Haynsworth Sinkler Boyd, P.A. v. Holmes (In re Holmes)*, 610 B.R. 541, 546 (Bankr. D.S.C. 2020)).

When resolving a Rule 12(b)(6) motion, a court may consider documents beyond the complaint without converting the motion to dismiss to one for summary judgment under narrow circumstances. *Goldfarb v. Mayor and City Council of Baltimore*, 791 F.3d 500, 508 (4th Cir. 2015). In particular, a court may consider documents that are explicitly incorporated into the complaint by reference and those attached to the complaint as exhibits. *Goines v. Valley*

---

considered in such a manner. Therefore, the request shall not be allowed at this time. To the extent it is determined to be an allowable request for relief in the Motion, however, it is denied without prejudice.

*Community Services Bd.*, 822 F.3d 159, 166 (4th Cir. 2016) (citing *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007)).  Documents submitted by the party seeking dismissal that were not attached to or expressly incorporated in a complaint, may also be considered so long as the document was integral to the complaint and there is no dispute about the document's authenticity.  *Id.* (citing *Sec'y of State for Defence v. Trimble Nav. Ltd.*, 484 F.3d 700, 705 (4th Cir. 2007).  To be integral, a document must be one that by its very existence and the mere information it contains, give rise to the legal rights asserted.  *Chesapeake Bay Found., Inc. v. Servestal Sparrows Point, LLC*, 794 F. Supp 2d 602, 611 (D. Md. 2011)).  Courts may also properly take judicial notice of matters of public record.  *See Hall v. Virginia*, 385 F.3d 421, 424 (4th Cir. 2004).

In this case, the Complaint and Motion specifically identify as authentic and do not dispute the documents that control the parties' relationship.  Further, during the hearing on Debtor's Motion for Immediate Turnover, Debtor's counsel and Creditor's counsel stipulated to the entry of the same six documents into the Court record as evidence: (1) Motor Vehicle Retail Installment Contract with additional down payment terms; (2) Notice of Right to Cure with mailing slip; (3) Notice of Disposition of Collateral with mailing slip; and (4) Sale Records from Rawls Auto Auction.  These materials have been extensively referenced in the Complaint and the Motion to Dismiss and serve as integral parts of the pleadings.  Because the parties stipulated to the entry of these materials into the Court's records, neither Debtor not Creditor challenges the authenticity of these documents.  Therefore, consideration of these documents in the context of the allegations in the Complaint is appropriate.

## SUMMARY OF ALLEGATIONS

On October 21, 2021, Debtor purchased a Vehicle with financing provided by Creditor through a retail installment sales contract.  The contract required Debtor to make a down payment of $5,050.00 to fund her purchase and secure financing from Creditor in the principal amount of $20,139.00 with simple interest accruing at the rate of 19.88% per annum.  Debtor remitted $4,550.00 of the down payment in cash, and Debtor and Creditor agreed that Debtor would pay the remaining $500 of the down payment by November 4, 2021. The installment sales contract thereafter required 51 monthly payments of $592.87 per month beginning on December 5, 2021, for repayment of principal balance with interest.[2]  In the event of Debtor's default under any terms of the retail installment sales contract, the contract limited Creditor's ability to repossess the Vehicle by stating that Creditor could only repossess after giving Debtor "any notice the law requires."[3]

Additionally, the retail installment sales contract notified Debtor of her right to redeem the Vehicle by stating, "If you take my motor vehicle, you will tell me how much I have to pay to get it back." The contract also noted that the right of redemption[4] ends when the Vehicle is either sold or Creditor has entered a contract for sale or accepted the collateral as full or partial satisfaction of the retail installment sales contract with Debtor.

On November 4, 2021, and before filing her bankruptcy, Debtor defaulted on remitting the $500.00 required to fully fund her down payment.  Debtor filed a Chapter 13 bankruptcy petition on November 17, 2021. Because Debtor had two prior bankruptcy cases dismissed within the year

---

[2] In this case, those payments were due after the bankruptcy petition was filed.

[3] Under S.C. Code Ann. § 37-5-111, Debtor has statutory right to cure any default on payments.  The right to cure lasts until the expiration of 20 days following Creditor's mailing of a notice of right to cure in the form detailed in S.C. Code Ann. § 37-5-110.

[4] S.C. Code Ann. § 36-9-623 provides Debtor with a statutory right of redemption, which can be exercised by remitting a curing payment or, if the loan balance has been accelerated, by remitting the total balance owed under the retail installment sales contract.

preceding her current bankruptcy case and because of the provisions of 11 U.S.C. § 362(c)(4)(A),

the automatic stay provided by 11 U.S.C. § 362 did not go into effect.[5]  Along with the petition,

Debtor filed a Chapter 13 plan that proposed to repay Creditor's claim in full along with 5.25%

interest per annum over the life of her plan through monthly payments of $383.00 per month. The

payments to Creditor under the plan would be disbursed by the Chapter 13 Trustee.

Approximately two weeks after Debtor filed her bankruptcy case, Creditor sent Debtor a

Notice of Right to Cure on November 30, 2021.  In the Complaint, Debtor alleges that she never

received the transmittal.  The Notice of Right to Cure, identified by both parties' pleadings as

applicable in this case, does not follow the official from required by S.C. Code Ann. § 37-5-110

and expressly indicated that because Debtor was in a bankruptcy, she was not required to remit

any payment to Creditor.  The Notice initially stated in bold print as follows: "**The demand for

payment does not apply because of your bankruptcy, but is being sent to you as required by

state law.**"  Contrary to that statement, the Notice later stated that Debtor must pay $500 by

December 20, 2021, to preclude Creditor's exercise of its right to repossess. The Notice also stated

that Debtor's first payment of $592.87 under the retail installment sales contract was due on

December 5, 2021, and disclosed a total outstanding balance of $21,078.20.  A week after sending

the Notice of Right to Cure, Creditor, through counsel, filed and served a timely objection to

Debtor's Chapter plan on December 6, 2021, arguing that Debtor filed her case in bad faith, that

the plan was not financially feasible, and contesting the proposed interest rate.  Debtor did not

remit the $500 curing payment identified in the Notice of Right to Cure by December 20, 2021,

and did not pay the post-petition payment of $592.87 due on December 5, 2021.[6]  In the absence

---

[5] Debtor never filed a motion to secure an order from the Court to impose the automatic stay.
[6] Debtor alleges that those amounts were addressed by her Chapter 13 plan by proposing to pay Creditor's claim in full.

of the cure payment of $500 as stated in one part of the Notice of Right to Cure, Creditor repossessed the Vehicle on December 21, 2021.   On the following day, Creditor sent Debtor a Notice of Disposition of Collateral to disclose that due to the default in payment Creditor would sell the Vehicle at a private sale after the close of business on January 3, 2022.[7]  No document or contract referenced indicated a valid acceleration of the total debt.

After the repossession but before the sale of the Vehicle, Debtor alleges that her counsel contacted Creditor's bankruptcy counsel on or about December 28, 2021, to negotiate a return of the Vehicle based upon an agreed upon treatment of Creditor's secured claim under Debtor's plan. According to the allegations in the Complaint, Debtor's counsel and Creditor's counsel reached an agreement in which Debtor would remit the December 2021 payment by December 31, 2021, and the January 2022 payment by January 16, 2022.  Debtor also offered to pay Creditor's accrued attorney's fees and repossession costs as part of her treatment of Creditor's claim in her Chapter 13 plan. In return, Creditor would return the Vehicle to Debtor and would receive payments offered under Debtor's plan. The Complaint also alleges that after reaching the agreement, Creditor's counsel denied that she had reached any agreement with Debtor's counsel.[8] Despite Debtor's attempts to pay the cure amount before the sale, Creditor refused to accept any payments from Debtor during her bankruptcy.

On January 3, 2022, Debtor filed an adversary proceeding against Creditor and demanded turnover of the Vehicle along with a claim for an alleged willful violation of stay in violation of 11 U.S.C. § 362(a).   Debtor served her Complaint and a Motion for Immediate Turnover via

---

[7] The Notice of Disposition of Collateral stated that Creditor would sell the Vehicle by private sale after the tenth day following the date of the Notice of Disposition, and if that date fell on a legal holiday or Sunday, then the sale would occur after the next business day.  The Notice of Disposition of Collateral is dated December 22, 2021, which made January 1, 2022—a Saturday—the tenth day thereafter.  Creditor sold the Vehicle on January 4, 2022, following the close of business on Monday, January 3, 2022.

[8] Creditor's Motion to Dismiss does not expressly deny an agreement but asserts that Debtor has failed to substantiate or demonstrate the existence of an agreement or attach any writing to demonstrate it.

overnight mail and personal service to notify Creditor of the January 6, 2022, hearing on Debtor's Motion for Immediate Turnover. On January 5, 2022, Creditor's counsel notified Debtor's counsel that Creditor had sold the Vehicle on January 4, 2022, at a private sale. The Vehicle sold for $17,500 to a third-party, and Creditor collected $17,350 after costs. Creditor applied the net sales proceeds to the Debtor's outstanding balance (after the down payment), which left a deficiency balance that Creditor waived. The hearing for the Motion for Immediate Turnover was held, but the Court could not grant the motion or order Creditor to turnover the Vehicle because it was no longer in Creditor's possession as it had been sold before the hearing. The Court, however, indicated that an action for the fair market value of the Vehicle and any other claim could proceed under the adversary proceeding, and therefore, the Court allowed Debtor to file an amended complaint.

Despite the sale of the Vehicle and to continue her bankruptcy case and the litigation against Creditor, on January 7, 2022, Debtor filed an amended plan that no longer provided treatment for a debt to Creditor under the retail installment sales contract. On January 11, 2022, the Court entered a text order denying Debtor's motion for immediate turnover of the Vehicle. On that day, Debtor also filed her first amended complaint, and Creditor responded to the first amended complaint by filing and serving a motion to dismiss on January 21, 2022. Creditor withdrew its objection to confirmation on January 27, 2022, and never filed a proof of claim in the bankruptcy case. The Court conducted a hearing on the motion to dismiss on February 17, 2022, and granted it in part by dismissing Debtor's violation of stay claim since no automatic stay existed in the case and denied it in part by finding a basis for relief existed and granting Debtor leave to amend her complaint further. Thereafter, during this adversary proceeding, on February 22, 2022,

Debtor's amended plan, which provided no further payments to Creditor, was confirmed without objection.

On March 3, 2022, Debtor filed the present Complaint to allege a claim for turnover of the fair market value of the Vehicle as property of the estate, a claim arising from Debtor's proposed Chapter 13 plan and the agreement between counsel, and a claim based on the extension of time provided by 11 U.S.C. § 108(b). In response, Creditor filed a motion to dismiss to argue that Debtor failed to state a claim under the requirements of Rule 8 of the Federal Rules of Civil Procedure, that the Vehicle was not a part of Debtor's bankruptcy estate, that Debtor failed to state a claim based on the provisions 11 U.S.C. § 1322, and that no claim under 11 U.S.C. § 108(b) had been properly pled.

## CONCLUSIONS OF LAW

### I.    Turnover Claim for Fair Market Value.

"A turnover action under section 542 of the Bankruptcy Code invokes the court's most basic equitable powers to gather and manage property of the estate." 5 Collier on Bankruptcy ¶ 542.01 (16th ed. rev. 2021) (quoting *Braustein v. McCabe*, 571 F.3d 108, 122 (1st Cir. 2009)).

11 U.S.C. § 542(a) establishes a cause of action to compel delivery of estate property or its value to the trustee in the possession, custody, or control of an entity, other than a custodian in possession of estate property. *In re Joyner,* 326 B.R. 334, 344 (Bankr. D.S.C. 2004); *In re Jennings*, C/A No. 01-02330-W, Adv. Pro. No. 01-80044-W, 2001 WL 1806980 (Bankr. D.S.C. Sept. 17, 2001). Specifically, section 542(a) states as follows:

> Except as provided in subsection (c) or (d) of this section, an entity, other than a custodian, in possession, custody, or control, *during the case*, of property that the trustee may use, sell, or lease under section 363 of this title, or that the debtor may exempt under section 522 of this title, shall deliver to the trustee, and account for, such property or the value of such property, unless such property is of inconsequential value or benefit to the estate.

11 U.S.C. § 542(a) (emphasis added).  Under the plain language of § 542(a) the following elements must be shown to compel turnover of property of the estate or its value: (1) that during the case, (2) an entity other than a custodian (3) was in possession, custody, or control of property that a trustee could use, sell, or lease under 11 U.S.C. § 363 or that a debtor may exempt under 11 U.S.C § 522, and (4) that such property is not of inconsequential value or benefit to the estate.  *Id.; see also In re Lancaster*, No. 10-00359-8-JRL, 2012 WL 3065544, at *1 (Bankr. E.D.N.C. July 12, 2012); *In re Radden,* 35 B.R. 821, 826 (Bankr. E.D. Va. 1983); 5 Collier on Bankruptcy ¶ 542.03 (16th ed. rev. 2021).   The Debtor's current Complaint details sufficient allegations for a turnover of value claim even after the Creditor's post-petition sale of the Vehicle.

 In the Complaint, Debtor alleges her prepetition purchase of the Vehicle on October 21, 2021, and her ownership and possession of it when she filed her current bankruptcy case on November 17, 2021.   The allegations also detail Creditor's post-petition repossession of the Vehicle on December 21, 2021, during Debtor's bankruptcy case. The Complaint and the retail installment sales contract further establish Creditor's security interests in the Vehicle and confirm that Creditor has never been a custodian of the Vehicle.  Under these circumstances, Debtor has sufficiently pled the first two elements of a turnover claim under § 542(a).

 Next, 11 U.S.C. § 522 permits Debtor to claim an exemption in the Vehicle under state law, and Debtor claimed the applicable state law exemption in the bankruptcy schedules that she filed with her petition.  *See* 11 U.S.C. § 522(d).  Indeed, Creditor concedes that the Vehicle is subject to exemption under 11 U.S.C. § 522 by arguing that Debtor's ability to claim an exemption in the Vehicle precludes its inclusion in Debtor's bankruptcy estate.  This argument, however, fails as a matter of law.

Critically, Creditor's argument fails to acknowledge the significant differences between Chapter 7 bankruptcies and Chapter 13 bankruptcies. In the Chapter 7 context, the Supreme Court and other courts have recognized that when a Chapter 7 debtor claims an exemption in property of the estate, then such property is no longer a part of the bankruptcy estate that is available for distribution by the Chapter 7 Trustee. *See Taylor v. Freeland & Kronz,* 503 U.S. 638, 642 (1992) (noting in dicta that "[t]he [Bankruptcy] Code, however, allows the debtor to prevent the distribution of certain property by claiming it as exempt."); *Abramowitz v. Palmer*, 999 F.2d 1274, 1276-77 (8th Cir. 1993) (recognizing that Chapter 7 debtor's claim of an exemption in a home precluded its inclusion as property of the estate available for distribution by the Chapter 7 Trustee). In Chapter 13 cases, however, Chapter 13 debtors retain possession of the bankruptcy estate assets and commit their future income to repay creditors instead of having their non-exempt assets liquidated. *See, e.g., Carroll v. Logan*, 735 F.3d 147, 151 (4th Cir. 2013) (recognizing that Chapter 13 bankruptcy cases provide Chapter 13 debtors with the benefit of retaining encumbered assets and curing defaults to secured creditors by making a multi-year commitment to repay under a court-confirmed plan).   Under this substantive distinction between Chapter 7 cases and Chapter 13 cases, assets that a Debtor claims as exempt in a Chapter 13 case, while not available for distribution to creditors, are nevertheless included and protected in the bankruptcy estate for a Chapter 13 debtor. Indeed, neither 11 U.S.C § 541 nor 11 U.S.C. § 1306(a), which sets forth the property of a Chapter 13 bankruptcy estate, preclude the inclusion of exempted property in a Chapter 13 debtor's bankruptcy estate.

Finally, the Vehicle is not of inconsequential value or benefit to the estate as indicated by its sale for $17,500.00 after Debtor's down payment of $4,550.00.  Transportation to and from employment and for household tasks, such transporting children to school or day care and

purchasing groceries, is a critical need for a successful Chapter 13 reorganization.  *See, e.g., In re Radden,* 35 B.R. at 823 (holding that reliable transportation is necessary for an effective reorganization under a Chapter 13 plan).  Accordingly, the Vehicle was an integral part of Debtor's reorganization and a critical asset of her bankruptcy estate.

The allegations in the Complaint show that Debtor has stated a claim for turnover that precludes dismissal of Debtor's turnover cause of action, and the fact that Creditor repossessed the Vehicle post-petition does not change this result.  *See, e.g., Beaman v. Vandeventer Black, LLP (In re Shearin)*, 224 F.3d 353, 356 (4th Cir. 2000) (turnover of estate property or the value of the property was required even though the entity no longer had possession of the property); *In re Joyner,* 326 B.R. 334, 344 (Bankr. D.S.C. 2004) (holding that Chapter 7 Trustee was entitled to turnover of $19,000 value of motor vehicle under 11 U.S.C. § 542 after secured creditor improperly sold motor vehicle post-petition); *In re Riding,* 44 B.R. 846, 848 (Bankr. D. Utah 1984) ("The Bankruptcy Court can order the turnover of property in which the debtor holds only a contingent possessory right, such as a right of redemption or the right to cure a default, as long as adequate protection can be afforded to the secured party.").

By stating that an entity in possession of property of the estate "shall deliver" to the debtor[9] such property or the value of such property, 11 U.S.C. § 542(a) "creates an affirmative obligation on the part of the party holding estate property to turn the property over, and that obligation is not dependent upon the holding of a hearing or the entry of an order by the bankruptcy court."  *See In re Rutherford*, 329 B.R. 886, 892 (Bankr. N.D. Ga. 2005).   According to § 542(a), the duty to

---

[9] 11 U.S.C. § 542(a) states that estate property "shall be delivered to the trustee" but the term "trustee" has been recognized to include the debtor in Chapter 13 cases.  *See In re Jennings*, C/A No. 01-02330-W, Adv. Pro. No. 01-80044-W, 2001 WL 1806980, at *4 n.5 (Bankr. D.S.C. Sept. 17, 2001) (citing 1 Keith M. Lundin, *Chapter 13 Bankruptcy* 52–2 (3d ed. 2000) ("[T]here are a great many reported decisions in which Chapter 13 debtors have been awarded turnover of estate property pursuant to § 542."); *Sanders v. Cooper (In re Sanders),* 78 B.R. 444, 446 (Bankr.D.S.C.1987)).

turnover estate property exists at any time "during the case."  Since a Chapter 13 debtor is entitled

to use estate property during a Chapter 13 reorganization under 11 U.S.C. § 1303—which grants

debtors the ability to use estate property under 11 U.S.C. § 363—a Chapter 13 debtor has standing

to pursue turnover claims under 11 U.S.C. § 542(a).  *See In re Coleman*, 229 B.R. 428, 429-30

(Bankr. N.D. Ill. 1999); *see also In re Jennings*, C/A No. 01-02330-W, Adv. Pro. No. 01-80044-

W, 2001 WL 1806980, at *6. In this case before the Court, there is no dispute that the Vehicle was

owned by Debtor at the time of filing of the bankruptcy and is therefore property of the estate

under 11 U.S.C. § 541(a)[10] subject to Debtor's use post-petition and subject to the provisions of

Debtor's plan.

### a.  The Vehicle remained a part of the bankruptcy estate after Creditor repossessed it post-petition.

In the Complaint, Debtor alleges that Creditor took possession of the Vehicle during

Debtor's Chapter 13 case by repossessing it *post-petition* on December 21, 2021.

Creditor's *post-petition* repossession of the Vehicle does not preclude its continued

inclusion in Debtor's bankruptcy estate.  *See Kirby v. Horne Motor Co.*, 366 S.E.2d 259, 262 (S.C.

Ct. App. 1988) (recognizing that there was no transfer of title following repossession of car from

borrower until the sale of the collateral after expiration of the applicable redemption period); *see

also In re Adams,* C/A No. 12-01394-HB, 2012 Bankr. LEXIS 2039, *9 (Bankr. D.S.C. May 7,

2012) (concluding that motor vehicle that was repossessed *post-petition* after expiration of the

automatic stay remained property of the estate under 11 U.S.C. § 541(a)); *In re Touchstone*, Case

---

[10] Under section 541(a)(1), the bankruptcy estate is "comprised of all the following property, wherever located: … all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1).  To facilitate a debtor's reorganization under the Bankruptcy Code, "all the debtor's property must be included in the reorganization estate."  *United States v. Whiting Pools, Inc.,* 462 U.S. 198, 203 (1983).  Further, the Supreme Court has recognized that that a debtor's bankruptcy estate "included property of the debtor that has been seized by a creditor prior to the filing of a petition for reorganization."  *Id.* at 209.

No. 14-12197-NPO, Adv. Proc. No. 14-01082-NPO, 2015 WL 401252, at *3 (Bankr. N.D. Miss. Jan 29, 2015) ("This Court agrees with the vast majority of courts that have held that repossession is merely a device to collect on the creditor's claim and, thus, does not transfer ownership to the creditor.").

In this case, Creditor alleged that it was Debtor's prepetition default in paying the $500 deferred down payment pursuant to the retail installment sales contract that provided a right to repossession, followed by a period to allow a cure of that default, and upon failure to cure, a right to sell the Vehicle.  Regardless of the filing of the bankruptcy case and in light of Creditor's continued efforts to collect since there was no automatic stay, Debtor's statutory right to cure under S.C. Code Ann. § 37-5-111 and her statutory right of redemption under S.C. Code Ann. § 36-9-625 were sufficient property interests in the Vehicle that were included in her bankruptcy estate according to both §§ 541(a) and 1306.  *See, e.g., In re Moffet*, 356 F.3d 518, 522 (4th Cir. 2004) (holding that all of debtor's interests in motor vehicle—which was properly repossessed prepetition—including debtor's statutory right of redemption under Virginia law, "are unquestionably legal or equitable interests of … [debtor's] that are included within her bankruptcy estate"); *In re Leverette*, 118 B.R. 407, 409 (Bankr. D.S.C. 1990) (recognizing that right of redemption in motor vehicle repossessed prepetition "is sufficient to bring the property within the meaning of property of the estate.") (internal quotations omitted)).

The "right to cure" a default is provided under South Carolina's Consumer Protection Code, specifically S.C. Code Ann. § 37-5-111.  This section provides: "[u]ntil expiration of the minimum applicable period after the notice is given, the consumer may cure all defaults consisting of a failure to make the required payment by tendering the amount of all unpaid sums due at the time of the tender, *without acceleration*, plus any unpaid delinquency or deferral charges." S.C.

Code Ann. § 37-5-111(1) (emphasis added). Debtor's right to cure arose prepetition upon her default of her obligations under the retail installment agreement, specifically her failure to pay her deferred down payment of $500 on November 4, 2021. At any time after that default and before the end of the twenty-day period disclosed in the Notice of Right to Cure, Debtor could exercise her right to cure by tendering the amount of all unpaid sums due at the time of tender, plus any unpaid delinquency or deferral charges. *See* § 37-5-111(1). The filing of bankruptcy or lack of automatic stay did not extinguish these rights.

In this case, the applicable and authenticated Notice of Right to Cure identified by the parties does not appear to comply with state law by indicating that a debtor in bankruptcy does not have to pay the cure amount. If such notice is defective and no notice of right to cure was correctly given, it may prohibit further collection efforts. The question regarding the Notice of Right to Cure at issue here raises a plausible claim at this stage of the proceeding.

Upon default, a debtor also has additional rights under Article 9 of the Uniform Commercial Code. *See* S.C. Code § 36-9-601(d). The failure to remit timely payments is an event that triggers "default" under the terms of the retail installment sales contract. Therefore, upon Debtor's default, the rights provided under S.C. Code § 36-9-601 *et seq*. accrued. *See* § 36-9-601 ("After default, a debtor and an obligor have the rights provided in this part and by agreement of the parties."). These rights also include a statutory right of redemption, which allowed Debtor to either pay amounts <u>due before acceleration</u> of her debt, such as her right to cure under S.C. Code Ann. § 37-5-111, or <u>after acceleration of her debt</u>, by repaying the full balance owed. *See* § 36-9-623, Official Cmt. 2. ("To redeem the collateral a person must tender fulfillment of all obligations secured, plus certain expenses. If the entire balance of a secured obligation has been accelerated, it would be necessary to tender the entire balance ... It requires payment in full of all monetary

obligations then due and performance in full of all other obligations then matured. If unmatured secured obligations remain, the security interest continues to secure them (i.e., as if there had been no default)."). The Court could not locate a contractual provision allowing the acceleration of debt in any case.

The Complaint further alleges that upon a request by Debtor of the redemption amount, she was provided a copy of the Notice of Right to Cure. Thereafter, Debtor attempted to pay and redeem before the sale but her attempts to pay were refused by the Creditor. These allegations provide a sufficient plausible claim for relief at this stage of the proceeding.

## II.    Effect of 11 U.S.C. § 108(b)

As raised in the Complaint, Debtor alleges that she had the right to cure the default upon which the repossession and sale were based, either by agreement of the parties or within a finite period to cure or exercise a right of redemption, under 11 U.S.C. § 108(b).

The application of § 108(b) to Debtor's prepetition default may affect this proceeding by providing Debtor with an extension of time to cure a default or exercise a right of redemption under bankruptcy law for a period of 60 days after the filing of the bankruptcy case—which would have been January 16, 2022, for this case. The sale of the Vehicle occurred before that date in this case which therefore raises an issue regarding an improper termination of Debtor's rights.  Debtor alleges that she attempted to cure the default within the extended period allowed by § 108(b), but Creditor refused to accept her payments.  She further alleges that she contacted Creditor through her counsel on December 28, 2021, and requested the amount needed to redeem the property and Defendant's counsel responded with a copy of the Notice of Right to Cure indicating that Debtor needed to pay only $500. Debtor then alleges that she attempted to pay the agreed amount on December 31, 2021, but was informed that Creditor would not accept any payment.  Based on

these allegations, Debtor requests that the Court find Creditor in contempt of court for "violating

… [11 U.S.C. §] 108(b)."

Section 108(b) provides:

> (b) Except as provided in subsection (a) of this section, if *applicable*
> *nonbankruptcy law*, an order entered in a nonbankruptcy proceeding, *or an*
> *agreement fixes a period within which the debtor* or an individual protected under
> section 1201 or 1301 of this title may file any pleading, demand, notice, or proof
> of claim or loss, *cure a default*, *or perform any other similar act*, and such period
> has not expired before the date of the filing of the petition, *the trustee* may only
> file, cure, or perform, as the case may be, before the later of--
>
> (1) the end of such period, including any suspension of such period occurring on
> or after the commencement of the case; or
>
> (2) 60 days after the order for relief.

11 U.S.C. § 108(b) (emphasis added).  Section 108 does not independently provide a basis for

imposing liability or damages on another party, but rather incorporates applicable nonbankruptcy

law that provides a period within which a debtor may take certain actions, including a right to

"cure a default, or perform any other similar act," and provides an extension of time for "the

trustee" to take such action.

This Court has not previously considered whether a chapter 13 debtor may invoke § 108(b)

to obtain an extension of time to "file, cure, or perform" under nonbankruptcy law. The purpose

of § 108 is to toll nonbankruptcy established time limits to preserve the debtor's rights for the

benefit of the bankruptcy estate. 10 NORTON BANKR. L. & PRAC. 3d 11 U.S.C. § 108 (January

2022). While the statute appears on its face to apply only to the trustee, many courts have held that

the provisions of § 108 may be invoked by a chapter 13 debtor in possession of property of the

estate. *See, e.g., In re Connors,* 497 F.3d 314, 320 (3rd Cir. 2007) (recognizing that a chapter 13

debtor had the right to redeem within 60 days from the filing of the petition by operation of

§ 108(b) where the redemption period had not expired prior to the date the petition was filed); *In*

*re Thorpe,* 612 B.R. 463, 467 (Bankr. S.D.Ga. 2019) (finding that if a chapter 13 debtor pawns a vehicle and files bankruptcy before redemption period has expired under state law, then 11 U.S.C. § 108(b) extends the redemption period to 60 days, running from the date the petition is filed); *In re Jones,* 544 B.R. 692, 700 (Bankr. M.D. Ala. 2016) (finding that § 108(b) extends the length of a chapter 13 debtor's right of redemption to 60 days after the filing of the bankruptcy petition if the right of redemption would otherwise expire sooner); *In re Francis,* 489 B.R. 262, 267 (Bankr. N.D. Ga. 2013) (holding that the debtor had the right to redeem property sold in a tax sale within the original redemption period provided under state law as extended by 60 days under 11 U.S.C. § 108(b)); *Thomas v. GMAC Residential Funding Corp.,* 309 B.R. 453, 456 (D. Md. 2004) (holding that a chapter 13 debtor could invoke § 108(b) to extend the time to give notice to rescind a transaction under 15 U.S.C. § 1635(a) until 60 days after the petition date); *Bryant v. Hamilton County (In re Bryant),* 548 B.R. 239 (Bankr. E.D. Tenn. 2016) ("As the chapter 13 debtor is given the rights and powers of a trustee over property of the estate by virtue of § 1303 and the right of redemption constitutes property of the estate, the extension of time to exercise that right afforded to a trustee by § 108(b) is available to the chapter 13 debtor just as it is available to the chapter 11 debtor in possession"); *In re Murray,* 276 B.R. 869 (Bankr. N.D. Ill. 2002) (stating that "§ 108(b) should apply to Chapter 13 debtors who are entitled to remain in possession of all property of the estate and retain the right to any cause of action that would otherwise pass to a trustee."); 2 COLLIER ON BANKRUPTCY, ¶ 108.02 ("A chapter 13 debtor, who has the right to use, sell, lease and possess property of the estate under sections 1303 and 1306(b), should [similar to a chapter 11 debtor in possession] be able to rely on section 108(b)."). [11]

---

[11] Several courts have similarly concluded that a chapter 13 debtor may invoke the similarly worded § 108(a), which provides "the trustee" with a two-year tolling of unexpired statutes of limitation provided under nonbankruptcy law. *See, e.g., McConnell v. K-2 Mortg. (In re McConnell),* 390 B.R. 170, 181 (Bankr. W.D. Pa. 2008) ("[T]here is no reason why Section 108 of the Bankruptcy Code should not also apply to Chapter 13 debtors-in-possession prosecuting

This Court agrees with the reasoning of the courts who have concluded that chapter 13 debtors may use the benefits of the extensions of time provided under § 108(b). This conclusion is consistent with the Bankruptcy Code, Fourth Circuit precedent as well as this Court's prior decisions that find that Chapter 13 debtor has the exclusive right to use, sell, or lease, other than in the ordinary course of business, property of the estate under §§ 363(b) and 363(f) as provided by § 1303, as well as the exclusive right to bring lawsuits on claims that are property of the estate and control that litigation. *Wilson v. Dollar General Corp.,* 717 F.3d 337, 344 (4th Cir. 2013) (holding that the chapter 13 debtor retains possession of property of the estate and assumes, exclusive of the trustee, the rights and powers of a trustee and that implicit in the act of possession is the right of the chapter 13 debtor to sue in his own name under Fed. R. Bankr. P. 6009); *In re Goldston,* 627 B.R. 841, 859 (Bankr. D.S.C. 2021) (finding that the debtor has certain rights and powers which he maintains exclusive of the trustee, including the right to use, sell or lease property of the estate and the power to sue and be sued and control litigation and that the chapter 13 trustee does not have the statutory authority to appear in probate court to collect an inheritance on behalf of the estate); *In re Boyd,* 618 B.R. 133 (Bankr. D.S.C. 2020) (finding that a chapter 13 debtor has the authority to use property of the estate and therefore, possesses the right to prosecute any causes of action that accrue post confirmation, exclusive of the trustee).

Further, under § 1306(b), a chapter 13 debtor "shall remain in possession of all property of the estate" that debtor acquires after the case but before the case is closed, dismissed, or converted except as provided in a confirmed plan or order confirming a plan. "Property of the estate"

---

estate property, as the debtor is the representative of the estate in prosecuting the action."); *In re Dawson,* 441 B.R. 1, 29 (Bankr. D.D.C. 2008) (holding that a chapter 13 debtor may invoke § 108(a) to toll statutes of limitation). *Stephenson v. Chase Home Fin. LLC,* No. 10cv2639-L(WMc), 2011 WL 2006117, at *5 (S.D. Cal. May 23, 2011) (finding that § 103 makes § 108 applicable to chapter 13 bankruptcies and a chapter 13 debtor has the trustee's capacity to sue on behalf of the estate, thus § 108(a) applies to extend the statute of limitations for chapter 13 debtors).

includes all legal and equitable interests of the debtor. 11 U.S.C. §§ 541(a) & 1306(a).

Accordingly, the right to cure a default or redeem property under state law is property of the

estate.[12] *Tidewater Finance Co. v. Moffett (In re Moffett),* 356 F.3d 518, 520 (4th Cir. 2004)

(finding that debtor's right of redemption is an equitable interest that is part of the bankruptcy

estate.); *In re Keisler,* No. 17-03304-DD, 2017 WL 4685000, at *2 (Bankr. D.S.C. Oct. 17, 2017)

(same); *In re Jones,* 544 B.R. at 700 (finding that a debtor's right to redeem collateral is property

of the estate); *In re Irish Bank Resolution Corp. Ltd. (in Special Liquidation)*, 559 B.R. 627 (Bankr.

D. Del. 2016) (finding that the debtor's right to cure a default is property of the estate) (citing

cases).[13] Therefore, the chapter 13 debtor benefits from and has standing to assert the extensions

of time provided by § 108.  Congress' intent as to that effect is further demonstrated by § 103(a),

which provides that the provisions of chapter 1 apply in chapter 13 cases, and by specifically

referencing the debtor and § 1301 within § 108(b).

The application of § 108 to chapter 13 debtors is also appropriate in light of the chapter 13

debtor's power to sue to enforce the turnover obligation under 11 U.S.C. § 542, despite the

language of § 542 providing that right to the "trustee" and not the "debtor" as discussed earlier.

*Dawson,* 411 B.R. at 29 (noting that courts have recognized that the chapter 13 debtor, by virtue

of his right to possess and use the property of the estate, may sue to enforce the turnover obligation

---

[12] As stated, the right to cure is property of the estate even if the right accrued to the debtor after the bankruptcy case was filed.  Under § 1306(a)(1), "property of the estate includes, in addition to the property specified in section 541 of this title… all property of the kind specified in such section that the debtor acquires after the commencement of the case but before the case is closed, dismissed, or converted to a case under chapter 7, 11, or 12 of this chapter." In most cases, the creditor would be unable to provide debtor with notice of right to cure post-petition due to the automatic stay. However, in this case, the automatic stay did not go into effect pursuant to 11 U.S.C. § 362(c)(4)(A)(i) and the Notice was provided post-petition.

[13] According to the confirmed plan in this case, upon confirmation, property of the estate remains property of the estate, but possession of property of the estate shall remain with the debtor. The plan further provides: "The chapter 13 trustee shall have no responsibility regarding the use or maintenance of property of the estate.  Nothing in the plan is intended to waive or affect adversely any rights of the debtor, the trustee, or party with respect to any causes of action owned by the debtor." This indicates Debtor's right to enforce her rights regarding the Vehicle, including the prosecution of this adversary proceeding post-confirmation.

under § 542(a)); *Seigfried v. Board (In re Seigfried)*, C/A No. 14-01102-t, 2014 WL 7240071 (Bankr. D.N.M. Dec. 19, 2014) ("[I]n Chapter 13 cases[,] debtors have the exclusive right to use and control estate property and seek turnover.").

The application of § 108, even without the exercise of nonbankruptcy remedies, may affect the plausibility of the § 542 claim for turnover for fair market value. If the sale of the Vehicle occurred improperly or prematurely in the context of a § 108 extension, then Debtor's property interest has not been properly terminated under applicable state law. Therefore, the Vehicle or the fair market value thereof continue to be property of the bankruptcy estate and subject to the immediate and self-executing turnover provisions of § 542.[14]

The allegations of the Complaint indicate that Debtor is also asserting that she was entitled to extension of time for a "finite period" to exercise her right to cure her default and her right to redeem property under applicable nonbankruptcy law. Under § 108(b), Debtor appears to have a plausible claim for nonbankruptcy relief if she is entitled to an extension of time to act to "cure a default or perform any other similar act" if the following criteria are met: (1) applicable nonbankruptcy law or an agreement provides that Debtor may cure a default or perform any other similar act; (2) applicable nonbankruptcy law or agreement fixes a period within which the debtor may cure a default or perform any other similar act and (3) such period has not expired prior to the date of the filing of the petition.

## Right to Cure Default

### a. Right to Cure Default is Provided under Applicable Nonbankruptcy Law

As stated earlier, the allegations and incorporated documents indicate that Debtor's right to cure arose prepetition upon her default of her obligations under the retail installment agreement,

---

[14] The inability to turnover the Vehicle due to its sale to an unrelated third party may limit Creditor's choices in this case.

specifically her failure to pay her deferred down payment of $500 on November 4, 2021.[15]  At any time after that default and prior to the end of the minimum applicable period after the notice of a consumer's right to cure is provided, Debtor may exercise her right to cure by tendering the amount of all unpaid sums due at the time of tender, plus any unpaid delinquency or deferral charges. *See* § 37-5-111(1).

### b. *Applicable Nonbankruptcy Law "Fixes a Period" Within Which Debtor May Cure Default*

Viewed together, §§ 37-5-110 and 37-5-111 fix a period within which a debtor may exercise her right to cure following default.[16]  Section 37-5-110 provides that a creditor may give notice of the right to cure after a debtor has been in default for ten days for failure to make a required payment. The debtor may cure the default by making payment of the delinquent amount at any time during this initial 10-day "grace" period.  After the expiration of the ten-day period with no payment from the debtor, the creditor may then deliver or mail notice of the debtor's right to cure, which commences a twenty-day period within which the debtor may cure by paying the delinquent amount. *See* § 37-5-111 (providing that a creditor may not take possession of collateral or otherwise enforce a security interest in goods that are collateral until twenty days after a notice of the consumer's right to cure is given).  "Cure restores the [debtor] to his rights under the agreement as though the defaults had not occurred." § 37-5-111(1). If notice of the right to cure has been provided in compliance with § 37-5-110 and the debtor fails to cure within the twenty-

---

[15] The "right to cure" a default is provided under South Carolina's Consumer Protection Code, specifically S.C. Code Ann. § 37-5-111.  This section provides: "[u]ntil expiration of the minimum applicable period after the notice is given, the consumer may cure all defaults consisting of a failure to make the required payment by tendering the amount of all unpaid sums due at the time of the tender, without acceleration, plus any unpaid delinquency or deferral charges." S.C. Code Ann. § 37-5-111(1).

[16] Examining the plain meaning of "fixes a period" does not require a specific number of days but could be a continuing right until an action or condition occurs, which terminates the right.

day period, the creditor may proceed with repossession of collateral or other applicable state law

remedies.

### c.   *The Time Period for Debtor to Cure Default Did Not Expire Prior to Petition Date*

As discussed above, Debtor's right to cure arose upon her default when she failed to pay

her deferred down payment of $500 on November 4, 2021.  Creditor asserts that it mailed Debtor

a Notice of Right to Cure on November 30, 2021, which was post-petition. Debtor disputes that

this Notice was properly provided.  Nevertheless, Debtor's right to cure did not expire prior to the

filing of the bankruptcy petition.

Accordingly, it appears that Debtor was entitled to an extension of time under § 108(b) to

exercise her right to cure under S.C. Code Ann. § 37-5-111 before the later of the end of the cure

period under state law or 60 days after the order for relief.  The Court finds that Debtor has

sufficiently pleaded entitlement to an extension under § 108(b) and that Debtor attempted to cure

the default within the 60-day period provided by § 108(b).  Furthermore, the parties' pleadings

establish the Vehicle was sold within 49 days of the filing of the petition, a period shorter than the

extended period.

A review of the Notice of Right to Cure[17] applicable in this matter and identified by the

parties without dispute raises questions regarding compliance with nonbankruptcy state law,

specifically § 37-5-110, which provides for damages pursuant to § 37-5-111[18] and which coincides

with Debtor's request for damages.

In addition, S.C. Code Ann. § 37-1-103 provides that "[u]nless displaced by the particular

provisions of this title, *the Uniform Commercial Code* and the principles of law and equity,

---

[17] A copy of the Notice allegedly sent to Debtor was admitted by stipulation as an exhibit during the hearing on the motion for turnover on January 6, 2022.

[18] For example, under S.C. Code Ann. § 37-5-111, "[a]ny repossession of collateral or rented property in violation of this section is void and the creditor is liable for conversion."

including the law relative to capacity to contract, principal and agent, estoppel, fraud, misrepresentation, duress, coercion, mistake, *bankruptcy*, or other validating or invalidating cause supplement its provisions." Accordingly, it is appropriate to also consider the effect of § 108(b)'s extension of Debtor's Right of Redemption under Article 9 of South Carolina's version of the Uniform Commercial Code.

<u>**Right of Redemption**</u>

Section 108(b) also provides an extension where applicable nonbankruptcy law fixes a period within which the debtor may file any pleading, demand, notice, or proof of claim or loss, cure a default or *perform any similar act,* such as exercising a right of redemption.

### a. *Right of Redemption is Provided under Applicable Nonbankruptcy Law*

Upon default, a debtor has additional rights under Article 9 of the Uniform Commercial Code. *See* S.C. Code § 36-9-601(d). The retail installment sales contract defines "default" as follows: "I will be in default if …I do not pay any amount when it is due; or I break any of my promises in this contract; I allow a judgment to be entered against me or the collateral; or I file bankruptcy, bankruptcy is filed against me, or the motor vehicle becomes involved in a bankruptcy, except that if I bought the vehicle primarily for personal, family, or household use, you will only treat these events as defaults if they significantly impair the prospect of payment, performance, or realization of the collateral." The rights provided under S.C. Code § 36-9-601 *et seq.* accrue upon Debtor's default. *See* § 36-9-601 ("After default, a debtor and an obligor have the rights provided in this part and by agreement of the parties."); *see also* § 36-9-623, Official Cmt. 2. ("(S.C. Code Ann. § 36-9-609 provides that "[a]fter default, a secured party (1) may take possession of the collateral; and (2) without removal, may render equipment unusable and dispose of collateral on a debtor's premises under Section 36-8-610."

### b. Applicable Nonbankruptcy Law "Fixes a Period" Within Which Debtor May Exercise Right of Redemption

Upon default, Debtor's right to redeem the Vehicle arose under S.C. Code Ann. § 36-9-623. Under S.C. Code Ann. § 36-9-623, to redeem collateral, a person shall tender: (1) fulfillment of all obligations secured by the collateral; and (2) the reasonable expenses and attorney's fees described in Section 36-9-615(a)(1). This section further provides that "[a] redemption may occur at any time before a secured party: (1) has collected collateral under Section 36-9-607; (2) has disposed of collateral or entered into a contract for its disposition under Section 36-9-610; or (3) has accepted collateral in full or partial satisfaction of the obligation it secures under Section 36-9-622." This section establishes the conditions upon which the time to exercise the right to redemption ends. For instance, after default, Debtor may redeem at any time between the date of default and the date Creditor sells the Vehicle, which effectively provides a period for Debtor to perform and redeem.[19] Under §§ 36-9-610 and 36-9-614, which incorporates § 36-9-613(1), Creditor is required to provide a notification before disposition of the collateral which provides the date, time, and place of the disposition. Viewed together, these sections fix a period within which a debtor may exercise her right to redeem following default.

### c. The Time Period for Debtor to Exercise Right of Redemption Did Not Expire Prior to Petition Date

The allegations in the parties' pleadings indicate clearly that Debtor's right to redeem, which arose from the prepetition default, did not expire prior to the petition date. Debtor alleges in the Complaint that the Vehicle was repossessed on December 21, 2021, which occurred post-

---

[19] Creditor's repossession of collateral was also subject to the terms of the Security Agreement. The terms of the Security Agreement provide: "MY RIGHT TO REDEEM: If you take my motor vehicle, you will tell me how much I have to pay to get it back. If I do not pay you to get the motor vehicle back, you can sell it or take other action allowed by law. My right to redeem ends when the motor vehicle is sold, or you have entered into a contract for sale or accepted the collateral as full or partial satisfaction of a contract." The Security Agreement does not appear to contain a provision providing for acceleration of the full debt upon default.

petition. On December 22, 2021, Debtor further alleges that Creditor sent a Notification of Disposition of Collateral[20] to Debtor advising that the property would be sold after the 10th day from the date of the notice.  The Notification advised that Debtor had "the right to have the collateral returned … upon payment of the account balance plus any repossession expenses, attorney's fees, and other cost [Creditor had] incurred… as long as payment is made before the Vehicle is sold." The Notification further provided that Debtor may request an accounting of the unpaid indebtedness by calling Defendant.

In as much as Debtor's right to redeem accrued upon default and the period to exercise that right was fixed by South Carolina law, it appears that Debtor may have been entitled to an extension of time under § 108(b) to exercise her right to redeem under S.C. Code Ann. § 36-9-623 within 60 days after the order for relief.  The Court finds that Debtor has sufficiently pleaded entitlement to an extension under § 108(b) and that Debtor attempted to redeem within the 60-day period provided by § 108(b).  Under the retail installment contract, Creditor was required to notify Debtor of the amount she must pay to redeem the collateral.  In the Amended Complaint, Debtor alleges that on December 29, 2021, in response to her request for the amount to redeem, she was provided a copy of the Notice of Right to Cure showing that $500 was needed to redeem. She further alleges that she attempted to make the required payment before the sale.  Furthermore, she indicated a proposal to pay Defendant's claim in full through her chapter 13 plan.  Ultimately, Creditor sold the Vehicle before the end of the 60-day period.

It is apparent that to the extent the application of § 108(b) extended Debtor's right to cure or exercise her right to redemption, both were cut short by Creditor's sale of the Vehicle. According to S.C Code Ann. § 36-9-623, the right to redeem continues until the occurrence of one

---

[20] A copy of the Notification of Disposition of Collateral was identified by the parties without dispute and was admitted by stipulation as an exhibit during the hearing on the motion for turnover.

of the express statutory actions necessary to terminate it. Without such an action, the right to redeem continues. In addition, both the South Carolina Consumer Protection Code and South Carolina Commercial Code provide nonbankruptcy law remedies for the failure to properly act. S.C. Code Ann. § 37-5-111 provides that any repossession of collateral in violation of this section is void, and creditor is liable for conversion. Under S.C. Code Ann. § 36-9-625, Debtor may be entitled to certain remedies based upon Defendant's failure to comply with Article 9, including injunctive relief, damages for any loss caused by a failure to comply, and certain statutory damages.[21]

Debtor's Complaint, however, which invokes § 108(b) and claims damages akin to those allowed under nonbankruptcy law, did not specify the nonbankruptcy statutory or case authority on which she relies. To put the Court in the proper posture to consider any such claims and to provide Creditor fair notice of the specifics of any such claim at this early stage of the proceedings, the Court *sua sponte* has determined Debtor should be more definite and certain in those allegations.

### III.    Violation of Chapter 13 Provisions

Debtor's Complaint further alleges that an agreement was reached between counsel for Debtor and Creditor for the treatment and payment of Creditor's claim in the Chapter 13 plan in exchange for the return of the Vehicle to Debtor before its sale. Debtor is correct in insisting that various provision of Chapter 13 provide a debtor the ability to cure a default (*i.e.,* § 1322(b)(3)) or pay a creditor's claim (*i.e.,* § 1325(a)(5)), as a means of resolving a right of redemption, or modify a secured claim (*i.e.,* § 1322(b)(2)). Existence of the automatic stay is not prerequisite to confirmation of a Chapter 13 plan. *See In re Fleming*, 349 B.R. 444, 447 (Bankr. D.S.C. 2006).

---

[21] There may be other remedies not referenced here.

Creditor has responded that any such agreement must be demonstrated and substantiated by specifying the terms with attachment of a written document to the Complaint and would only be effective after confirmation of a plan. At this stage, however, upon deeming the allegations of the Complaint, which are stated with specificity, as true, the Court overrules Creditor's argument and finds the allegations are sufficient and plausibly state a claim.

In *Moffett,* the Fourth Circuit held that a debtor could exercise her right of redemption by paying the creditor in full over the life of the plan and obtain turnover of the repossessed vehicle from the creditor. *Tidewater Finance Co. v. Moffett (In re Moffett),* 356 F.3d 518, 520 (4th Cir. 2004). The Fourth Circuit stated that the Bankruptcy Code entitles a debtor to restructure the timing of her payments in order to exercise her right of redemption under §§ 1322(b)(2) and 1322(b)(3). *Id.; see also In re Litton*, 330 F.3d 636, 640 (4th Cir. 2003) ("A proposed plan may, however, seek to *cure* 'any default,' including a default on a claim secured by the debtor's principal residence."). In *Brittain,* this Court stated "if properly provided for in the schedules, statements, and a plan, it appears that a debtor… may assert a right of redemption as property of the estate, seek turnover to obtain personal possession of the applicable collateral, and provide for the exercise of the right of redemption through a chapter 13 plan." *In re Brittain,* 435 B.R. 318 (Bankr. D.S.C. 2010).

As the means for enforcing the parties' alleged agreement to make payments in return for the return of the Vehicle to Debtor and treatment of Creditor's claim in a Chapter 13 plan, Debtor seeks to invoke the § 105 authority of the Court to issue an order if necessary for the opportunity to carry out the provisions of Title 11. *Norwest Bank Worthington v. Ahlers*, 485 U.S. 197, 206 (2010) (noting that under § 105, "a court may exercise its equitable power only as a means to fulfill some specific [Bankruptcy] Code provision"). Being mindful that a Court may not use § 105 where

there are other remedies provided in the Bankruptcy Code or to act contrary to the Code, *see Off. Comm. of Equity Sec. Holders v. Mabey*, 832 F.2d 299, 303 (4th Cir. 1987) (recognizing that equitable powers under § 105 "are not a license for a court to disregard the clear language and meaning of the bankruptcy rules and statutes), or allow Debtor to frame alternate grounds for relief outside of the Bankruptcy Code, such as a breach of contract, estoppel, or other non-bankruptcy claims, the Court agrees with Creditor that a more definite and certain statement of authority, statutory or caselaw, is necessary for the Court to evaluate and Creditor to respond to these allegations.  For purposes of the Motion to Dismiss, however, the Court finds the allegations presented by the Debtor sufficient and plausible.

## <u>CONCLUSION</u>

For the foregoing reasons, it is ordered that Creditor's Motion is **DENIED**.

It is **FURTHER ORDERED** that because it is not sufficiently clear whether Debtor is attempting to pursue nonbankruptcy law claims beyond the turnover claim for value stated in the Complaint and in order to make a more definite and certain statement of grounds and actions to enforce any alleged agreement between the parties to return the Vehicle and provide treatment of Creditor's claim in the bankruptcy case, **the Court will grant Debtor 10 days from the entry of this order to allege with sufficient specificity any additional or nonbankruptcy causes of action related to § 108(b) and circumstances related to the parties' agreement to be litigated in this adversary proceeding, including any and all damages claims.**  *See, e.g., Abdul-Mumit v. Alexandra Hyundai, LLC*, 896 F.3d 278, 293 (4th Cir. 2018) (noting Fourth Circuit's "policy to liberally allow amendment" of pleadings); *Pittston Co. v. United States,* 199 F. 3d 694, 704 (4th Cir. 1999) (recognizing that the grant or denial of an opportunity to amend complaint is within the discretion of the court); *Lampkin-Asam v. Volusia County School Bd.*, C/A No. 6:07-cv-116-Orl-

31DAB, 2007 WL 1577814, at *1-*2 (M.D. Fla. 2007) (recognizing that if a defendant does not

seek a more definite statement in response to vaguely pleaded complaint, the court has authority

to intervene *sua sponte* and order re-pleading).

**Upon timely filing and service of an amended complaint, Creditor shall file its**

**responsive pleading within 14 days after service of the amended complaint.**

**AND IT IS SO ORDERED**.

**FILED BY THE COURT**
**04/07/2022**



US Bankruptcy Judge
District of South Carolina

Entered: 04/07/2022